## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY JONES<br>635 Massachusetts Ave., N.E.<br>Washington, D.C. 20003<br><br>     Plaintiff,<br><br>v.<br><br>PUBLICIS SAPIENT<br>a/k/a PUBLICIS.SAPIENT<br>a/k/a SAPIENT CORPORATION<br>40 Water Street<br>Boston, MA 02109<br><br>     Defendant. | Case No.:<br><br>(Jury Trial Requested) |

### COMPLAINT

Plaintiff Jeffrey Jones ("Plaintiff" or "Jones"), by and through undersigned counsel, complains against Defendant Publicis Sapient, also known as Publicis.Sapient, and Sapient Corporation, ("Defendant" or "Publicis").

### SUMMARY OF ACTION

1.  Plaintiff brings this action against Defendant to redress violations of the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq*.; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.* Specifically, Plaintiff alleges Publicis discriminated against him by terminating his employment because he is a black African-American man.

### JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States. This Court further has subject matter

1

jurisdiction over the claims raised herein pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5, and D.C. Code § 2-1401.01, *et seq*. because the subject matter of Plaintiffs' claims is premised on Section 1981, Title VII and the DCHRA.

3.      The Court has personal jurisdiction over Defendant because Defendant conducts business throughout the District of Columbia and Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4.      Venue is proper in this Court pursuant to 42 U.S.C. § 1988, 42 U.S.C. Section 2000e-5, 28 U.S.C. § 1391, and D.C. Code § 2-1402.01, *et seq*., because Plaintiff performed work for Defendant within this judicial district and resides within this judicial district.

## PARTIES

5.      Plaintiff Jeffrey Jones is a black African-American man. He worked for Publicis from January 16, 2018 to September 4, 2018. He has resided in the District of Columbia during all times relevant to this Complaint, and continues to reside in the District of Columbia.

6.      At all times relevant to the Complaint, Plaintiff was an employee of Defendants within the meaning of 42 U.S.C. § 2000e(f) and 42 U.S.C. § 12111.

7.      Publicis is a corporation headquartered in Boston, Massachusetts, and incorporated in Delaware. During all times relevant to this Complaint, it transacted business in the District of Columbia.

8.      Publicis is an international company that provides management and Strategy Consulting, digital advertising, and digital product management services for corporate clients.

9.      At all times relevant, each Defendant has continuously been an employer engaged in an industry affecting commerce pursuant to 42 U.S.C. § 2000e(b).

10.     Defendant has had more than 500 employees in each of twenty or more calendar weeks in the current or preceding calendar year.


## ADMINISTRATIVE EXHAUSTION

11.     On May 14, 2019, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging Publicis fired him because he is a black male (Charge No. 570-2019-02025).

12.     Plaintiff's charge alleged that Publicis' Human Resources Director Laurie Jadick discriminated against him during several interactions that Plaintiff had with Jadick, including when Jadick fired Plaintiff on August 28, 2018, effective September 4, 2018.

13.     On June 3, 2019, the EEOC issued Jones his Notice of Suit Rights regarding his discrimination charge against Publicis. The Notice is attached hereto as Exhibit A.


## STATEMENT OF FACTS

### Background

14.     From January 16, 2018 to September 4, 2018, Jones worked as a Manager[1] in Publicis's Commodities Group.

15.     Plaintiff worked primarily in Publicis' Arlington, Virginia office, but on a weekly basis he worked from his home in the District of Columbia.

16.     Plaintiff also went to the District of Columbia often as an employee of Defendant to meet with clients and potential clients.

---

[1] Publicis was not consistent in applying Jones' title, and company documents refer to him as both a Manager and Senior Manager.

17.     As a Manager in the Commodities Group, Plaintiff's job duties included supervising other employees, business development, proposing and managing the implementation of new information technology ("IT") systems, leveraging subject matter expertise in utilities as well as oil and gas to deliver IT products, and building the business case for clients to adopt an IT-driven approach.

### First Meeting with Jadick

18.     On July 25, 2018, Jones met with Laurie Jadick, Direct of Human Resources at Publicis, who expressed concern regarding Jones's interactions with certain coworkers.

19.     When Jones asked Jadick to clarify what she was talking about, she responded by mentioning two alleged interactions Jones had had, each with a different coworker.

20.     The first allegation Jadick mentioned involved a female coworker who complained that Jones had assigned work to her.

21.     Jones explained that this coworker had complained because she was unaware that Jones had been instructed to assign work to her.  He explained that the matter had been resolved and that he and this coworker now had a good working relationship.

22.     Jadick's third allegation involved Jones and a coworker talking in a coffee shop during a work break. During this conversation, the female coworker had told Jones that her relationship with her boyfriend had ended, and he replied that this was, "Such a waste"

23.     Jones explained to Jadick that he had made this statement to console his coworker and to express sympathy.

### Second Meeting with Jadick

24.     After the first meeting, Jadick arranged a second meeting with Jones. On August 8, 2018, Jadick met with Jones again, and again mentioned the second incident she had raised in their prior meeting on July 25. Specifically, Jadick berated Jones for walking to hardware store across the street from Publicis'

Arlington office with a coworker. Jadick had not mentioned that walking to a hardware store was in any way prohibited or discouraged during their prior meeting on July 25. During the meeting, Jadick asked Jones if he understood how walking to the nearby hardware store was inappropriate.  He replied that he did not.

### Third Meeting with Jadick

25.     On August 28, 2018, Jadick met with Jones a third time. Public Sector Vice President Dan Roche was present during the meeting. During this meeting, Jadick informed Jones he would he removed from his position through a reduction in force ("RIF"), effective September 4, 2018. During the same meeting, Jadick changed her explanation for Jones' termination, stating that the decision was  "impacted" by their prior meetings on July 25 and August 8, 2019.

26.     Jadick termination of Jones' employment violated Publicis' policies and procedures and was otherwise irregular for several reasons.

27.     Jadick terminated Jones' employment although she was not in his supervisory chain.

28.     Jadick did not consult with any supervisor in Jones' supervisory chain before terminating Jones' employment.

29.     Publicis did not perform a meaningful investigation before Jadick terminated Jones' employment.

30.     Jadick did not communicate with Jones's Vice President and Business Unit Lead before terminating Jones' employment; Jones' Business Unit Lead first learned of his dismissal from Jones himself.

31.     Jadick did not arrange for anyone from Jones' Business Unit to be present when she undertook his termination.

32.     Jadick did not arrange for anyone but herself, Dan Roche, and Jones to be present in the meeting when she undertook his termination.

33.     Jadick did not provide Jones the option of having another person in the meeting to advise or counsel him when she undertook his termination.

34.     Jadick provided shifting and contradictory reasons for Jones' termination, informing Jones that his dismissal was both the result of a RIF and also based the incidents they discussed during their prior meetings on July 25 and August 8, 2019.

35.     Although Jadick stated that Jones was fired for the incidents they discussed during their prior meetings on July 25 and August 8, 2019, she did not conduct any significant investigation into the incidents they discussed during their prior meetings or engage in any escalating discipline before firing him.

36.     Jadick did not arrange for any notes to be taken during the meeting in which she fired Jones.

37.     Jadick did not use reasonable discretion in firing Jones.  The alleged actions of which Jones was accused do not rise to the level of misconduct and were not nearly severe enough to merit termination.

38.     Although Jadick stated that Jones was dismissed pursuant to a RIF, this RIF involved the layoffs of executives in higher-level positions only, while Jones held a middle management position within Publicis.

## COUNT I
## RACE AND SEX DISCRIMINATION
### (D.C. Human Rights Act, D.C. Code 2-14-1.01, *et seq.*)

39.     Plaintiff incorporates by reference each and every preceding paragraph, as though set forth fully herein.

40.     Plaintiff was a qualified employee of Defendant.

41.     At all relevant times, Plaintiff was an "employee" of Defendant pursuant to the DC Human Rights Act.

42.     At all relevant times, Defendant was the "employer" of Plaintiff pursuant to the DC Human Rights Act.

43.     Defendants terminated Plaintiffs' employment on September 4, 2018.

44.     Defendant selected Plaintiff for termination based on his race (African American), color (black), and sex (male).

45.     Defendant's termination of Plaintiff was willfully done with malice, was in bad faith, without just cause, and/or with conscious and/or reckless disregard of Plaintiff's protected rights pursuant to the D.C. Human Rights Act.

46.     Defendant's actions as set forth above constitute violations of the D.C. Human Rights Act and have caused Plaintiff to suffer damages, including lost past and future wages, emotional distress damages, and other damages.

## COUNT II
## RACE DISCRIMINATION
### (Section 1981)

47.     Plaintiff incorporates by reference each and every preceding paragraph, as though set forth in full herein.

48.     During his employment with Defendant, Plaintiff had a right to be protected from racial discrimination in the terms of his employment.

49.     Defendant made employment-based decisions, including the decision to terminate Plaintiff's employment, based on his race (African American).

50.     Defendant's discriminatory conduct deprived Plaintiff of his employment position with Defendant.

51.     Defendant's unlawful conduct was egregious, outrageous, and malicious and was in conscious disregard of Plaintiff's rights.

52.     Defendant's actions as set forth above constitute violations of Section 1981, and have caused Plaintiff to suffer damages, including lost past and future wages, emotional distress damages, and other damages.

### COUNT III
### RACE, COLOR, AND SEX DISCRIMINATION
### (Title VII, 42 U.S.C. §2000, *et seq.*)

53.     Plaintiff incorporates by reference each and every preceding paragraph, as if set forth fully herein.

54.     At all relevant times, Defendant was an "employer" within the meaning of Title VII.

55.     Throughout Plaintiff's employment with Defendant, Plaintiff was an "employee" within the meaning of Title VII.

56.     Defendant selected Plaintiff for termination based on his race (African American), color (black), and sex (male).

57.     Defendant discriminated against Plaintiff on the basis of his race, color, and sex by refusing to provide Plaintiffs with the same employment rights as other employees who were not of Plaintiff's race, color, and/or sex.

58.     By the acts and omissions alleged above, Defendant, in violation of Title VII, intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee.

59.     Defendant's actions as set forth above constitute violations of Title VII of the Civil Rights Act of 1964 and have caused Plaintiff to suffer damages, including lost past and future wages, emotional distress damages, and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant, and that this Court enter an Order:

a) Providing Plaintiff is to receive all relief allowed by law;

b) Ordering that Plaintiff is to be awarded lost past and future wages and benefits in an amount to be determined at trial;

c) Ordering that Plaintiff is to be awarded all medical expenses and all other out-of-pocket costs and expenses he incurred as a result of Defendants' unlawful conduct;

d) Ordering that Plaintiff is to be awarded damages for emotional distress, humiliation, loss of enjoyment of life, pain and suffering, and/or other compensatory damages in an amount to be determined at trial;

e) Ordering that Plaintiff is to be awarded punitive damages in an amount to be determined at trial;

f) Ordering that Plaintiff is to be awarded liquidated damages as allowed by law;

g) Ordering that Plaintiff is to be awarded the costs and expenses of this action, including expert witness fees, pre- and post-judgment interest, and reasonable attorneys' fees;

h) Ordering that Plaintiff is to be awarded any and all other equitable and legal relief allowed by law as the Court deems just and appropriate;

i) Ordering that Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law; and

j) Ordering any other relief that this Court deems equitable, appropriate, and just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Respectfully submitted,

The Spiggle Law Firm, PC

   /s/ Phillis h. Rambsy     
Phillis h. Rambsy
The Spiggle Law Firm
4830 A 31st Street, South
Arlington, Virginia 22206
202-499-8527 (telephone)
202-540-8018 (facsimile)

*Counsel for Plaintiff*